987 So.2d 874 (2008)
STATE of Louisiana
v.
Regina R. WALDROP.
No. 2007-KA-1605.
Court of Appeal of Louisiana, Fourth Circuit.
June 18, 2008.
*875 James "Buddy" Caldwell, Attorney General, Darryl W. Bubrig, Sr., District Attorney, Belle Chasse, LA, Gilbert V. Andry IV, Assistant District Attorney, New Orleans, LA, for the State of Louisiana.
Sherry Watters, Louisiana Appellate Project, New Orleans, LA, for Defendant, Regina R. Waldrop.
Court composed of Judge JAMES F. McKAY, III, Judge EDWIN A. LOMBARD, Judge Pro Tempore MOON LANDRIEU.
MOON LANDRIEU, Judge Pro Tempore.
The defendant, Regina R. Waldrop, was charged with one count of second degree murder, a violation of La. R.S. 14:30.1 and one count of obstruction of justice, a violation of La. R.S. 14:130.1. She subsequently pled guilty to the reduced charge of manslaughter, a violation of La. R.S. 14:31 and guilty to the obstruction of justice charge. The trial court ordered a pre-sentence investigation and appointed a sanity commission to conduct a psychiatric evaluation and to report its findings to the court. Following a hearing, the trial court sentenced Ms. Waldrop to serve twenty-two years on the manslaughter charge and ten years on the obstruction of justice charge; the sentences were to run concurrently. Ms. Waldrop appealed.

STATEMENT OF FACT
Because Ms. Waldrop pled guilty, the facts of this case are relatively unknown. However, based upon the Plaquemines Parish police report and the transcript from the guilty plea hearing, Ms. Waldrop admitted to stabbing the victim, Denver T. Avis, Jr., her housemate, and then tried to *876 clean up the house before the police arrived.

ERRORS PATENT
The record contains no errors patent.

ASSIGNMENT OF ERROR
In her sole assignment of error, Ms. Waldrop alleges that the district court erred in imposing excessive sentences given the mitigating factors of her mental illness, lack of criminal history and the victim's provocation.

DISCUSSION
According to the police report, on October 14, 2006, Plaquemines Parish Sheriff's deputies were dispatched to 3831 Hwy. 39 in Braithwaite, Louisiana, the scene of a possible homicide by cutting. Officers interviewed Ms. Waldrop and learned that she and Mr. Avis started the evening by being ejected from Boomtown Casino in Harvey, Louisiana. Jefferson Parish Police confirmed that the pair was escorted from the casino after arguing so loudly that they caused a disturbance. Ms. Waldrop told the police that Mr. Avis was so drunk that he passed out during the ride home. After they arrived home, Mr. Avis allegedly threw a chair and a beer bottle at Ms. Waldrop and then, when he picked up a tool box to hit her, she grabbed a knife from the dish drain and stabbed him in the chest. Ms. Waldrop went to the neighbors' house for help. The neighbors helped place Mr. Avis into the back of a van but had no idea where a hospital was located. Ms. Waldrop then called 911. After the emergency medical technicians arrived on the scene and took Mr. Avis to the hospital, Ms. Waldrop returned to the house and began cleaning up the blood. She then showered at the home of a neighbor and left the area, spending the night at a New Orleans East motel.
When the officers arrived and began to clear the residence, they observed a large amount of what appeared to be blood in the kitchen, on the pantry door and on the east wall. They also saw a substance resembling blood in the main traffic area on the floor of the residence. Ms. Waldrop was arrested a day later for second degree murder. During processing, the officers learned that she was a first time offender.
Medical reports from Richard W. Richoux, M.D., a psychiatrist, and Raphael F. Salcedo, Ph.D., a forensic psychologist, established that Ms. Waldrop has been under psychiatric treatment since the age of twelve. She has a history of bipolar disorder and suffers from a borderline personality disorder. Dr. Richoux's report states that "[Ms. Waldrop's] bipolar disorder in combination with the chaotic dynamics of her relationship with the victim, Denver Avis, Jr., predisposed her to react violently at the time of the instant offense."
Dr. Salcedo reported that Ms. Waldrop has an extensive history of psychiatric problems and treatment. He also reported that she was clearly aware of the importance of maintaining her treatment, but following Hurricane Katrina chose to move to Plaquemines Parish, an area where the mental health treatment facilities she needed were not available. There, Ms. Waldrop discontinued her medical regimen.
The trial court has wide discretion in the imposition of a sentence and a sentence imposed within statutory limits will not be deemed excessive in the absence of an abuse of that discretion. State v. Dangerfield, XXXX-XXXX (La.App. 4 Cir. 12/11/02), 834 So.2d 1151.
*877 "Generally, the reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.Code Crim. Proc. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case." State v. Pleasant 99-2349, p. 13 (La.App. 4 Cir.11/8/00), 772 So.2d 910, 917. If adequate compliance with La.C.Cr.P. art. 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Ross, 98-0283, p. 8 (La.App. 4 Cir. 9/8/99), 743 So.2d 757, 762.
La.C.Cr.Pr. art. 894.1(C) states, "[t]he court shall state for the record the considerations taken into account and the factual basis therefore in imposing sentence." The articulation of the factual basis for a sentence is the goal of art. 894.1, not rigid or mechanical compliance with its provisions; and, where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with art. 894.1. State v. Lanclos, 419 So.2d 475, 478 (La.1982); Pleasant, supra, 99-2349 at p. 13, 772 So.2d at 918.
In the instant case, the defendant pled guilty to the reduced charge of manslaughter and to obstruction of justice. The trial court then ordered a pre-sentence investigation report from the Department of Probation and Parole. At the sentencing hearing on September 6, 2007, the court stated:
I have received the presentence report to assist me in determining an appropriate sentencing, using the sentencing guidelines.
* * *
I have reviewed the facts supporting the plea and the facts contained in the presentence report contained under the Sentencing Guidelines in the Code of Criminal Procedure article 894.1
Later in the proceedings, the trial court stated:
I do want to make it a part of the record, because the PSI refers to it. But I also have a report from Dr. Salcedo, because defendant made that an issue in this case, that in regards to her having some mental problems, or that she was an abused victim in this matter.
The trial court then discussed at length the findings by Dr. Salcedo that Ms. Waldrop was a victim of domestic violence in prior relationships and that her relationship with the victim was violent and complicated by substance abuse. However, the trial court noted that he found no evidence to support the defendant's claim that she was physically abused on a regular or daily basis. Furthermore, the trial court noted that although both Dr. Salcedo and Dr. Richoux documented Ms. Waldrop's mental disorder and her treatment history, both acknowledged that her mental disability did not deter her from knowing right from wrong when she committed the offense. The trial court then sentenced Ms. Waldrop to twenty-two years on the manslaughter charge and ten years on the obstruction of justice charge and ordered the sentences be served concurrently.
At a hearing on Ms. Waldrop's motion to reconsider the sentences held on October 18, 2007, the trial court denied the motion, stating:
The court was very particular about its review of the evidence that it had received for the pretrial sentencing. And in fact, the court was the instigator behind appointing mental health people *878 to evaluate the defendant. And the court basically followed their conclusions that they were not convinced that any of these were proper defenses in mitigation of her being sentenced.
The record in this case clearly indicates that the trial court in imposing the sentences upon Ms. Waldrop gave great attention to the circumstances surrounding the death of Mr. Avis, relied on the presentence investigation report findings and considered the opinions of Dr. Salcedo and Dr. Richoux. Thus, we find that the trial court adequately complied with La. C.Cr.P. art. 894.1.
In her appeal brief, Ms. Waldrop cites several cases to support her argument that her sentence is excessive when compared to sentences received by other first time offenders or other defendants whose records contained many aggravating factors. She points to her mental illness, the fact that she was impaired when the event occurred, and the absence of a history of abuse against the victim as mitigating factors in her case.
In State v. Uloho, 04-55 (La.App. 5 Cir. 5/26/04), 875 So.2d 918, a habitual offender was convicted of obstruction of justice for hiding money from police and given twenty-five years. The court found that the sentence was not excessive where two guns were found in defendant's possession.
In State v. Matthews, 532 So.2d 270 (La.App. 3 Cir.1988) and State v. Taylor, 535 So.2d 1146 (La.App. 2 Cir.1988), both of which involve first offenders who were sentenced to the maximum sentence for manslaughter, when that was twenty-one years, the sentences were reduced in each case to eighteen years after the court found the sentences in both to be unreasonable. Ms. Waldrop argues that she got a greater sentence than the defendant in State v. Brown, 35,641 (La.App. 2 Cir. 8/20/03), 852 So.2d 1234, who admitted smoking cocaine with the victim, arguing with and slapping her near where she was found dead. The defendant in Brown received twenty years, one-half the maximum sentence, which was found not to be excessive. Ms. Waldrop argues that there are no such aggravating circumstances in this case.
However, in State v. Bell, 2002-2349, pp. 12-13 (La.App. 4 Cir. 8/6/03), 854 So.2d 429, Ms. Bell, a first offender, was sentenced to the maximum of forty years for manslaughter. Ms. Bell had no history of violence, except in her relationship with the victim, and yet the court specifically considered and overruled the mitigating factors.
Recently, in State v. Jones, 41,628 (La. App. 2 Cir. 4/24/07), 948 So.2d 356, the Second Circuit held that the trial court had acted within its discretion, after a defendant pled guilty to manslaughter, in imposing maximum sentence of forty years at hard labor, even though defendant had been previously diagnosed with paranoid schizophrenia, had suffered from mental and emotional problems since ten years of age, and had admitted to chronic use of illegal drugs.
In State v. Batiste, XXXX-XXXX (La.App. 4 Cir. 12/20/06), 947 So.2d 810, the defendant was sentenced to twenty years for manslaughter. The case involved an ongoing dispute between two men which escalated over several hours to homicide. The victim was the father of a young child. The defendant, found guilty by a jury of manslaughter, appealed the sentence as excessive. In affirming the sentence rendered by the trial court, this court held that despite the defendant's advanced age and the fact that the incident arose from senseless "trash talking" that ultimately provoked the shooting, a twenty-year sentence for manslaughter was not excessive, noting that the defendant could have been sentenced *879 to forty years. The court noted that the altercation resulted in the death of a human being, and that if the defendant had not armed himself, he would not have been convicted of shooting someone.
More recently, in State v. Allen, XXXX-XXXX (La.App. 4 Cir. 3/7/07), 954 So.2d 779, the court heard from three witnesses who testified that the defendant had repeatedly struck and threatened the victim, accusing him of having stolen his wallet. The victim left in the defendant's vehicle and was later found stabbed and beaten to death. The defendant alleged that his maximum sentence of forty years at hard labor was constitutionally excessive. This court disagreed, finding that the sentence was supported by the record.
In this case, we find that the trial court complied with La.C.Cr.P. art. 894.1 and that the sentences are not unconstitutionally excessive. Thus, we find no merit to Ms. Waldrop's assignment of error.

DECREE
Accordingly, for the reasons set forth above, Ms. Waldrop's convictions and sentences are affirmed.
AFFIRMED.