924 So.2d 1113 (2006)
STATE of Louisiana
v.
Darrel G. JONES, Jr.
No. 05-KA-735.
Court of Appeal of Louisiana, Fifth Circuit.
February 27, 2006.
*1114 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Assistant District Attorney, Gretna, Louisiana, for Plaintiff/Appellee.
Holli Herrle-Castillo, Marrero, Louisiana, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, SUSAN M. CHEHARDY, and WALTER J. ROTHSCHILD.
THOMAS F. DALEY, Judge.
Defendant, Darrel G. Jones, Jr., was sentenced to forty (40) years at hard labor for his conviction for manslaughter. Defendant appeals, arguing his sentence, which was the maximum allowed by statute, is excessive. For the following reasons, we affirm.

PROCEDURAL HISTORY
Defendant, Darrel G. Jones, Jr., was charged by indictment with one count of second degree murder in violation of LSA-R.S. 14:30.1, for the murder of Jason Sanxton. Defendant pled not guilty. A twelve-person jury found defendant guilty of the lesser charge of manslaughter in violation of LSA-R.S. 14:31. Defendant was sentenced to forty years of imprisonment at hard labor. Thereafter, defendant filed a Motion for Post Verdict Judgment of Acquittal, a Motion to Reconsider the Sentence, a Motion for New Trial, and a Motion for Appeal.[1] The trial court granted defendant's Motion for Appeal, but did not rule on defendant's Motion to Reconsider Sentence. Defendant's original appeal, No. 04-KA-1293, was dismissed and the case was remanded to the trial court for a ruling on defendant's Motion to Reconsider Sentence. After the trial court denied the motion, defendant now urges this appeal.

FACTS
On April 17, 2003, Sergeant Dennis Thornton of the Jefferson Parish Sheriff's Office responded to a call on Eisenhower Street in Metairie and found the victim, Jason Sanxton, dead with multiple gunshot wounds. The victim had a knife in his waistband and at least four gunshot *1115 wounds to his face.[2] At the scene, Sergeant Thornton found seven .380 semi-automatic spent casings and one projectile near the victim's body. After analysis, it was determined that these projectiles were used to kill the victim. After conducting interviews, defendant and Nolan Kirton were identified and arrest warrants were prepared. Sergeant Thornton later received information about an object on Kirton's roof and used a helicopter to fly over it. After the pilot observed a white object, Sergeant Thornton applied for and executed a search warrant to retrieve what was later identified as a .380 semi-automatic pistol wrapped in a white dish towel.
According to a witness, Grady Samuels, on April 17, 2003, he was walking to his home on Eisenhower Street and noticed defendant in the alley talking to Jason Sanxton. Defendant told Samuels to keep walking, because he was handling some business. Samuels kept walking and as he did, he heard gunshots. Thereafter, he walked back and observed defendant jump into the passenger's seat of a car driven by Kirton, someone Samuels had known for a long time. Samuels testified that he did not see either defendant or Sanxton with a weapon, but heard them arguing.
Another witness, Gerry Jones, testified that, on the same evening, he was smoking in his backyard on Eisenhower Street. He stated that about a block away, two individuals were in the alley when one of them started shooting. He observed the shooter waving his hands before shooting the victim in the head. After the initial shot, he heard about five or six more. According to Jones's testimony at trial, it did not appear to him that the two individuals were arguing.
Kirton testified that he was living on Eisenhower Street at the time of the incident. He stated that he had known the victim, Jason Sanxton, for over ten years. Kirton denied giving defendant, Jones, a ride from the murder scene. Kirton testified that on April 17, 2003, he first met up with the defendant at a Mid-City recording studio, and thereafter, he spent the night at defendant's house on the west bank. On the following day, he said that Jones gave him a ride home and attempted to give him a gun. Kirton stated that later defendant told him he had put the gun on the roof of Kirton's apartment. Thereafter, Kirton retrieved the gun and wrapped it with a blue and white towel in fear that the heat could cause the bullets to be fired. Kirton testified that at that time he was not aware what the gun was used for.
On May 1, 2003, Kirton left Louisiana and went to Dallas, Texas, because he was wanted for murder. Defendant, who was also wanted for murder, was already in Dallas at the time. After remaining in Dallas for six or seven months, Kirton returned to Louisiana. Kirton testified that he did not participate in the murder, nor did he know about the murder until defendant told him in Dallas that the gun was the weapon he used to murder Sanxton.
Kirton was aware that Jones had been mistakenly arrested on some distribution charges that involved the victim instead. Defendant had told Kirton that after he was incarcerated on the drug charges, he saw a video of the drug transactions in question and one of the participants was Sanxton, not himself.[3]
*1116 Defendant was ultimately arrested in Dallas and extradited to Louisiana. However, before returning, defendant gave two statements to Detective Edward Klein in the Dallas-Fort Worth Airport. Tapes of these statements were played for the jury. In his first statement, defendant denied shooting the victim.
In defendant's second taped statement, defendant admitted that he ran into the victim, who "started with him" about the narcotics incident. Defendant said that he had gone to get his gun because the victim had already pulled a gun on him. Defendant said that after getting the gun, he went to pick up Kirton, who was not ready, so he went to see another friend and ran into the victim. He stated that he pulled out his gun after the victim swung a knife twice at him. Defendant stated that he shot the gun once and turned his head. He stated that he "blacked out" and then was at home.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant argues that his forty-year maximum sentence for manslaughter was excessive, because the trial judge failed to consider the requirements of LSA-C.Cr.P. art. 894.1 and should have considered the factual basis for the conviction, as well as other mitigating factors in sentencing defendant. Defendant further contends that because inadequate justification was provided for the imposition of the sentence, the maximum sentence is nothing more than the needless imposition of pain and suffering. The State responds that sentencing is within the trial judge's discretion and the sentence imposed was not outside of the statute's bounds; therefore, the sentence cannot be determined excessive.
Defendant filed a Motion to Reconsider Sentence, arguing: (1) the sentence was excessive, violating the provisions of the U.S. Constitution, the Louisiana Constitution, all applicable statutes, and the Sentencing Guidelines set out by Legislative Enactment; and (2) the trial judge failed to consider mitigating circumstances.
The Eighth Amendment to the United States Constitution and Article I, Section 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Even if the sentence imposed is within the statutory limits, the sentence is considered excessive if it is grossly disproportionate to the severity of the offense or imposes a needless and purposeless pain and suffering.[4] In reviewing a sentence for excessiveness, this Court considers the punishment and the crime in light of the harm to society and gauges whether the penalty is so disproportionate as to shock its sense of justice; however, at the same time this Court recognizes the wide discretion afforded the trial judge in determining and imposing the sentence.[5]
Generally, maximum sentences are reserved for those cases that involve the most serious violations of the offense charged and the worst type of offender.[6] However, the trial judge has wide discretion in determining a sentence, and the court of appeal will not set aside a sentence for excessiveness if the record supports *1117 the sentence imposed by the trial judge.[7]
A reviewing court may not set a sentence aside absent a manifest abuse of discretion.[8] The Louisiana Supreme Court has stated that the question is not "whether another sentence would have been more appropriate but whether the trial court abused its broad sentencing discretion."[9] Three factors are considered in reviewing a judge's sentencing discretion: (1) the nature of the crime; (2) the nature and background of the offender; and (3) the sentence imposed for similar crimes by the same court and other courts.[10]
Defendant was charged with second degree murder, but was convicted of manslaughter in violation of LSA-R.S. 14:31. In pertinent part, LSA-R.S. 14:31(B) sets forth that "[w]hoever commits manslaughter shall be imprisoned at hard labor for not more than forty years." Defendant was sentenced to forty years imprisonment at hard labor.
Defendant contends that the trial court failed to consider mitigating factors prior to sentencing. Defendant argues that the trial court should have considered the defendant's history and background, including his lack of prior criminal activity and his standing in the community.
The record reflects that the trial judge did consider the letters received on defendant's behalf from his family, his former principal, his pastor, the program supervisor from Total Community Action, the assistant from the Human Resources Center, and the director from Desire Florida Avenue Community Council. During sentencing, the trial judge recognized the good that the letters spoke of, but noted the bad reflected in the testimony received in the case.[11] The seventeen-year old victim's mother testified regarding the impact of her son's death as well. The trial judge also briefly mentioned the victim's youth. The judge expressed to defendant that "[a] lot of hurt going around and you are the one that decided to get the hurt started. And just a lot of lives impacted." After stating that defendant would be sentenced to forty years imprisonment, the trial judge noted that manslaughter is a crime of violence and that defendant used a dangerous weapon, a firearm.
Defendant argues that the trial court's lack of consideration of mitigating factors is especially objectionable in light of the fact that no pre-sentence investigation was conducted. However, the Louisiana Supreme Court has held that a pre-sentence investigation is merely an aid to the court and not a right of the accused.[12] In the present case, the record does not reflect defendant's prior criminal history or lack thereof.
If the record supports defendant's sentence, the appellate court shall not set aside the sentence for excessiveness. LSA-C.Cr.P. art. 881.4(D). Even if a trial judge fails to set forth reasons for the sentence imposed, this Court can look to the record for support of the sentence.[13]
*1118 Although the trial judge did not state further reasons for imposing the maximum sentence, the record supports the sentence imposed. Jurisprudence reflects that the maximum penalty for manslaughter has been imposed in similar circumstances. In State v. Williams,[14] the defendant was charged with second degree murder and pled guilty to manslaughter pursuant to a plea bargain. At the plea hearing, the State presented the following facts: The defendant and the victim, who were involved in an ongoing dispute, became involved in a confrontation. The defendant shot the victim with a twelve-gauge shotgun at point-blank range. The victim died and defendant was sentenced to forty years imprisonment at hard labor. The Third Circuit found no manifest abuse of sentencing discretion by the trial judge.
In State v. Lanieu,[15] the defendant was charged with second degree murder and convicted of manslaughter. The defendant was sentenced to forty years at hard labor. In Lanieu, the defendant shot the victim in the head twice after an argument wherein the men cursed at each other in front of the defendant's home. After the shooting, the defendant drove off in the victim's car and dumped the victim's body in a field. The defendant claimed that prior to the shooting he saw the victim reach down in the car and saw the handle of what appeared to be a gun; however, two witnesses provided that they did not see the victim with a gun on that day. At sentencing, the trial court noted that the defendant was a nineteen-year-old first felony offender with no adult criminal history. The PSI noted that the defendant had been arrested for attempted second degree murder, but that the grand jury pretermitted the case. The First Circuit concluded that the sentence imposed was not grossly disproportionate to the severity of the crime.
In State v. Maxie,[16] the defendant and the victim were acquaintances who lived in the same apartment complex. The two men had a series of confrontations. The victim and the defendant argued on two separate occasions before the fatal shooting. The victim was shot four times, with the first bullet shattering a bone in the victim's leg and the three others entering the victim's chest cavity. During the first argument, the victim threatened the defendant with a knife and then after the shooting, there was a knife found in the area of the victim's body. Although a policeman testified that he found an opened knife, other witnesses provided they saw a closed knife near the victim's body. Defendant was charged with second degree murder, but was found guilty of manslaughter and sentenced to the statutory maximum at the time, which was twenty-one years. The trial judge noted in written reasons for sentencing that the defendant was twenty-two years old with a steady employment history and had never been convicted of another crime. The Third Circuit determined this sentence was not excessive, noting that the defendant shot the victim four times over an alleged and unreported theft when the defendant could have avoided the final confrontation with the victim, but instead responded to the victim's actions by arming himself with a rifle. The court also noted *1119 that although defendant knew the first bullet struck the victim, he continued to pull the trigger at least three more times.
In the instant case, Jones shot Sanxton at least four times. Particularly, defendant shot the victim four times in the face. Sergeant Thornton stated that he found seven spent casings and one projectile at the scene. Also, Gerry Jones testified that he heard six or seven gunshots. Although defendant argued that the victim tried to slash him twice with his knife prior to the shooting, the record reflects that the victim's knife was found in the waistband of the victim's pants, and it was stipulated that the first shot to the victim's head killed the victim. Defendant's second taped statement also revealed that he had had a previous altercation with Sanxton and had armed himself prior to this meeting because of that previous altercation. The number of times defendant shot the victim and the location of the injuries support the sentence imposed by the trial court. After the shooting, defendant fled the scene and later fled the state. Also, defendant was charged with second degree murder and was convicted of the lesser charge of manslaughter. Although defendant's prior criminal history is unclear from the record, jurisprudence supports imposing the maximum sentence for manslaughter, even for first felony offenders.
We affirm the defendant's sentence, finding that it is not excessive.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant argues that the minute entry indicates that the trial court imposed his sentence without benefit of probation, parole or suspension of sentence, while the transcript indicates only that the sentence was not subject to diminution for good behavior pursuant to LSA-R.S. 15:571.3 and is silent as to parole eligibility pursuant to LSA-R.S. 15:574.4. Defendant requests the minute entry be amended to delete the reference to the denial of parole. The State agrees the minute entry does not accurately reflect the transcript and recommends that the minute entry be amended to delete that portion, which reads that the sentence is to be served without benefit of parole, probation or suspension of sentence.
The commitment does reflect that defendant's sentence was imposed without the benefit of parole, probation or suspension of sentence. However, the sentencing transcript only reflects that the trial judge noted that defendant's forty-year sentence at hard labor was not subject to diminution for good behavior pursuant to LSA-R.S. 15:571.3. If a discrepancy exists between the minutes and the transcript, the transcript prevails.[17] We remand with instructions to amend the commitment and the minute entry to accurately reflect the sentence imposed as set forth in the sentencing transcript.

ERROR PATENT DISCUSSION
This Court has reviewed the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
Defendant filed a Motion for New Trial on May 21, 2004, after his sentence was imposed, arguing that the verdict was against the law and evidence. As provided in LSA-C.Cr.P. art. 853 a motion for new trial on these grounds must be filed and disposed of before sentence. It appears that this motion may have been inadvertently granted. It is noted that the trial judge granted defendant's Motion for Appeal on May 21, 2004, the same day he *1120 appears to have granted the Motion for New Trial. We find that the Motion for New Trial was untimely filed since it was filed after sentencing.
AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] See error patent discussion regarding the Motion for Post Verdict Judgment of Acquittal and Motion for New Trial.
[2] It is noted that the State and defendant stipulated that the first bullet shot to the victim's head was the actual cause of death. The State expressed that because of this stipulation, it was not necessary to obtain testimony from the forensic pathologist who performed the autopsy.
[3] The State and defendant stipulated as to a video and photographs concerning the drug transaction in which defendant was a victim of mistaken identity where he was identified instead of Jason Sanxton.
[4] State v. Lobato, 603 So.2d 739, 751 (La. 1992) (citations omitted).
[5] State v. Allen, 03-1205 (La.App. 5 Cir. 2/23/04), 868 So.2d 877, 879 (citation omitted).
[6] State v. Taylor, 02-1063 (La.App. 5 Cir. 2/25/03), 841 So.2d 894, 899, writ denied, 03-0949 (La.11/7/03), 857 So.2d 516 (citations omitted).
[7] Id.
[8] State v. Guzman, 99-1753 (La.5/16/00), 769 So.2d 1158, 1167.
[9] State v. Jones, 99-2207 (La.1/29/01), 778 So.2d 1131, 1133 (per curiam)
[10] State v. Le, 98-1274 (La.App. 5 Cir. 6/30/99), 738 So.2d 168, 171, writ denied, 00-2174 (La.4/12/01), 789 So.2d 587.
[11] It is noted that these letters are not included in the record.
[12] State v. Bell, 377 So.2d 275, 281 (La.1979) (citations omitted).
[13] See, State v. Uloho, 04-55 (La.App. 5 Cir. 5/26/04), 875 So.2d 918, 933, writ denied, 04-1640 (La.11/19/04), 888 So.2d 192 and cases cited therein.
[14] 03-1537 (La.App. 3 Cir. 6/9/04), 875 So.2d 1043, 1044, writ denied, 04-1951 (La.12/17/04), 888 So.2d 864.
[15] 98-1260 (La.App. 1 Cir. 4/1/99), 734 So.2d 89, 90-91, writ denied, 99-1259 (La.10/8/99), 750 So.2d 962.
[16] 594 So.2d 1072, 1073 (La.App. 3 Cir. 1992), writ denied, 598 So.2d 372 (La.1992).
[17] State v. Lynch, 441 So.2d 732 (La.1983).