FREDERICKA HOMBERG WICKER, Judge.
|2In this criminal proceeding, defendant/appellant Larry N. Lewis Jr. appeals his manslaughter conviction and his 30-year sentence. He assigns as error the sufficiency of the evidence and excessiveness of the sentence. For the reasons that follow, we affirm the defendant’s conviction, but vacate that portion of the judgment imposing a sentence of 30 years at hard labor and remand the case for resen-tencing in accordance with this opinion. We have also reviewed the record for errors patent and find none. See: La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
Procedural History
The defendant was charged by indictment with the second degree murder of Lionel Crain, allegedly occurring on March 18, 2005, a violation of La.R.S. 14:30.1. After waiving his right to a jury trial, the defendant proceeded with a bench trial. The trial judge found the defendant guilty of the lesser offense of ^manslaughter, a violation of La.R.S. 14:31. Later, the trial judge conducted a sentencing hearing. Following that, the trial judge sentenced the defendant to 30 years at hard labor. Defense counsel orally moved the court to reconsider the sentence as excessive. The trial judge denied the motion. In 2008, the trial judge granted the defendant’s timely application for post-conviction relief requesting an out-of-time appeal.
Facts
According to Dr. Susan M. Garcia, an expert in the field of forensic pathology, Lionel, who was 18 years old at the time, died on March 18, 2005 as a result of a single intermediate-range gunshot wound to the left side of his head. Dr. Garcia testified that an intermediate range is a distance of approximately eighteen inches to two and one-half feet from the victim to the gun’s muzzle. Former Jefferson Parish Deputy Craig Adam testified that he responded to the shooting, which occurred on Lapalco in Jefferson Parish.
Defense counsel informed the trial judge that the defendant did not deny that he had and fired the gun that would be introduced at trial and that the firing of the gun caused the death. Defense counsel, however, argued that the defendant’s actions in light of his youth were justified under the circumstances.
Deverrick Johnson, Isaac Calvin Bush, the defendant, and the victim were together at the time of the shooting. Deverrick and Isaac testified that on the date of the incident, March 18, 2005, the four individuals were high school students at Metro Outreach Christian Academy. School let out early that day. Isaac and Deverrick testified that they were 17 and 18 years of age, respectively, at the time of the 2006 trial. The defendant testified that he was 18 years old at the time of trial and 16 years old at the time of the shooting.
|4The testimony at trial revealed that there were two pairs of friends — the defendant and Isaac were friends,[1] while Deverrick and Lionel were friends. Otherwise, the parties were only school acquaintances.
Deverrick and Isaac testified that before the shooting, the four students met at a bus stop where they discussed plans to *388 smoke the marijuana that the defendant had in his possession.[2] The plans concerned purchasing a cigar within which to roll the marijuana. After the purchase, a fistfight took place and the shooting followed. Deverriek, Isaac, and the defendant testified to the events that led up to the shooting as follows:
Isaac testified that Lionel offered to obtain the cigar because the other students were underage and Lionel was old enough to do so. Deverriek testified that Lionel had provided Isaac with the dollar for the purchase.
Isaac stated that Lionel went to the gas station to purchase the cigar. When he returned with the cigar, Lionel gave the cigar to the defendant, who was expected to roll up the marijuana in the cigar. Meanwhile, Lionel went to the nearby Rally’s to see his girlfriend.
Deverriek testified that he and Lionel went to Rally’s to get something to eat. Within five minutes, they returned to the bus stop. Deverriek stated that the defendant and Isaac were at the bus stop attempting to light a half cigar. Isaac held the cigar in his hand. It appeared that Isaac had broken the cigar in half. Upon seeing a half cigar rather than a full one, Lionel grew angry. An argument between Isaac and Lionel followed.
Deverriek testified that a fistfight broke out between Lionel and Isaac. On the other hand, Isaac denied fighting with Lionel. Instead, he testified that he | a fought with Deverriek. The parties all agreed, however, that the defendant was not involved in a fight.[3]
Isaac agreed with the defendant and Deverriek that he and Lionel argued and that Lionel removed his shirt in preparing to fight with Isaac.
Deverriek explained that he attempted to stop Lionel from fighting with Isaac but was unsuccessful. After the failed attempt, Deverriek spotted Isaac with his hands in his jacket walking closely behind Deverriek. Deverriek stated that he hit Isaac because Deverriek believed that Isaac might have a weapon.
Isaac testified that Deverriek hit him in the back of his head, causing Isaac to stumble and fall. At that time, the gun that was in Isaac’s jacket pocket fell out. Isaac stated that he and Deverriek fought while Isaac was on the ground. While they fought, he saw the defendant move toward Isaac. Then, Isaac saw Lionel move toward Isaac as if Lionel was going to pick up the gun. Isaac did not know whether Lionel was going to hit Isaac or whether Lionel would grab the gun. Since the gun was available for anyone to grab, Isaac believed that everyone’s life was in danger.
Isaac testified that he finally stood up. At that time, he saw Lionel had backed up. Isaac also saw the defendant holding the gun to Lionel’s head. Then there was one shot and Isaac saw Lionel fall to the ground. Isaac stated that he did not see Lionel provoke the defendant. Isaac admitted that he told the police that he only heard the gunshot and he did not see the defendant fire the gun. He stated at trial that he was afraid when he spoke to the police. At trial, however, he testified that he and Deverriek both saw the defendant shoot Lionel.
*389 |,¡According to Deverrick, when Dever-rick hit Isaac, Isaac stumbled but did not fall. Next, Lionel began fighting with Isaac. Deverrick did not interfere. At one point, Deverrick saw Lionel hit Isaac resulting in Isaac’s tripping and falling down. Lionel allowed Isaac to stand. When Isaac stood, Isaac released his jacket and resumed fighting. Deverrick saw the defendant out of the corner of his eye move toward the jacket. Deverrick stated that Lionel ran up to the defendant. Dev-errick saw the defendant take the gun out of the jacket, raise the gun, and without hesitating shoot Lionel at point blank range in the left temple. As the defendant reached in the jacket, Lionel ran up to the defendant. As soon as Lionel ran up to the defendant, the defendant raised the gun without any hesitation.
The defendant testified that he never saw Lionel or Deverrick produce a weapon. He stated that he saw Lionel swinging at Bush but he could not tell if Lionel hit Isaac. He testified that he did not want Lionel to jump on Isaac. Therefore, after he saw Deverrick and Lionel jumping on his friend, he tried to stop the fight, but before he could, the gun fell out. The defendant testified that he was the closest person to the gun, and he wanted to get the gun so that no one would get hurt. When the defendant went to get the gun, Lionel approached the defendant and the gun fired one shot. The defendant explained that he raised the gun toward Lionel because Lionel was coming toward the defendant trying to rush the defendant to get the gun before the defendant could do so. The defendant stated that his arm was not fully extended when he pointed the gun. He denied pulling the trigger. When he raised the gun, his hand was on the trigger and the gun went off. The defendant testified that he did not squeeze the trigger intentionally. He did not know where the gun was aimed in relation to Lionel’s body. He stated that he had never fired that gun before.
17Deverrick testified that after the defendant shot Lionel, the defendant looked directly at Deverrick and said, “You want some too?” When the defendant started to raise the gun, Deverrick ran. The defendant denied pointing the gun at Dever-lick and making the threat.
Deverrick testified that the defendant and Isaac ran off and Deverrick returned to Lionel’s side. Isaac testified that he was in shock and ran. He stated that the defendant was a few steps behind him.
When Isaac was asked if he knew what the defendant did with the gun, he replied that the defendant threw it in a dumpster on the side of a store. The defendant and Isaac testified that after the shooting, they turned themselves in to the police.
Isaac testified that on that day, he brought a loaded gun to school with him. Isaac identified the state’s gun exhibit as the gun that he had that day. He had the gun for two weeks and the defendant knew that Isaac had that gun. During direct examination, he testified that the defendant knew that he had the gun with him that day. However, during cross-examination, Isaac was referred to his police statement where he told the police that the defendant did not know that Isaac had the gun with him at school. At trial, he testified that he recalled telling an officer that he was uncertain whether the defendant knew that Isaac had the gun that day. Finally, during redirect examination, he testified that the defendant did not know that Isaac had the gun with him that day.
The defendant denied knowing that Isaac had the gun that day.
Sufficiency
The defendant was charged with second degree murder. The responsive *390 verdicts for second degree murder are: guilty; guilty of manslaughter; guilty of negligent homicide; and, not guilty. La. C.Cr.P. art. 814(A)(3). The defendant was Isconvicted of the lesser included offense of manslaughter, a violation of La.R.S. 14:31. The defendant argues the evidence was insufficient to support his conviction for manslaughter or any other responsive verdict because the only rational conclusion is that he retrieved the gun in order to ensure that no one was hurt. He further contends that the gun accidentally discharged when Lionel lunged at him. The state responds that the evidence at trial was sufficient to prove the charged offense of second degree murder, and it was, therefore, sufficient to support a conviction of manslaughter. The state further argues that the evidence was sufficient to prove the defendant’s guilt under La.R.S. 14:31(A)(2)(a) of the manslaughter statute, since the shooting occurred during the commission of a felony (i.e., distribution of marijuana).[4] Finding that the evidence was constitutionally sufficient to support the conviction of the charged offense of second degree murder, and it was, therefore, sufficient to support a conviction of manslaughter, we pretermit a discussion of the state’s alternative theory relative to La.R.S. 14:31(2)(a).
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier-of-fact, viewing the evidence in the light most favorable to the prosecution, to find |9the essential elements of the crime beyond a reasonable doubt. State v. Cummings, 95-1377, p. 2 (La.2/28/96), 668 So.2d 1132, 1133.
La.R.S. 14:31 delineates two theories of manslaughter: specific intent manslaughter and felony/misdemeanor manslaughter. Under La.R.S. 14:31, subd. A(l), manslaughter is a first or second degree murder that is
committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed!)]
“[S]udden passion” and “heat of blood” are not elements of the offense of manslaughter; rather, they are mitigatory factors in the nature of a defense which exhibit a degree of culpability less than that present when the homicide is committed without them. State v. Lombard, 486 So.2d 106, 110-11 (La.1986) (Citations and footnote omitted). See also: State v. Johnson, 01-1362, pp. 11-12 (La.App. 5 Cir. 5/29/02), 820 So.2d 604, 610, writ denied, 02-2200 (La.3/14/03), 839 So.2d 32. *391 Since they are mitigatory factors, a defendant who establishes by a preponderance of the evidence that he acted in a “sudden passion” or “heat of blood” is entitled to a manslaughter verdict. Lombard, supra, 486 So.2d at 111 (Footnote omitted). Accord,: State v. Barbarin, 04-1094, p. 10 (La.App. 5 Cir. 3/1/05), 900 So.2d 95, 101. The defendant did not claim “sudden passion” or “heat of blood” at trial, nor does he do so on appeal.
The defendant did not dispute that he shot and killed the victim, but he argued at trial — as he does on appeal — that the shooting was not intentional.
In this case, the trial judge rejected the defendant’s version of the events while according greater weight to the testimony of other witnesses.
| ^Constitutional law does not require the reviewing court to determine whether it believes the witnesses or whether it believes that the evidence establishes guilt beyond a reasonable doubt. State v. Spears, 05-0964, p. 3 (La.4/4/06), 929 So.2d 1219, 1222 citing State v. Mussall, 523 So.2d 1305, 1309 (La.1988). Rather, the fact finder is given much discretion in determinations of credibility and evidence, and the reviewing court will only impinge on this discretion to the extent necessary to guarantee the fundamental protection of due process of law. Spears, supra, 05-0964 at 3, 929 So.2d at 1222-23 (Citations omitted).
Furthermore, when a defendant does not object to a legislatively responsive verdict, the defendant’s conviction will not be reversed, whether or not that verdict is supported by the evidence, as long as the evidence is sufficient to support the offense charged. State ex rel. Elaire v. Blackburn, 424 So.2d 246, 252 (La.1982), cert. denied, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983) (Footnote omitted); State v. Austin, 04-993, p. 13 (La.App. 5 Cir. 3/1/05), 900 So.2d 867, 878, writ denied, 05-0830 (La.11/28/05), 916 So.2d 143. The Blackburn court explained, at 251-52:
It would be unfair to permit the defendant to have the advantage of the possibility that a lesser “compromise” verdict will be returned (as opposed to being convicted of the offense charged) and then to raise the complaint for the first time on appeal, that the evidence did not support the responsive verdict to which he failed to object.
As the state argues, the defendant did not object below to the responsive verdict of manslaughter. Accordingly, the defendant is entitled to a reversal of his conviction only if the evidence is insufficient under the Jackson standard to support a conviction of the charged offense, second degree murder.
Second degree murder, as it pertains to this case, is defined as the killing of a human being “[w]hen the offender has the specific intent to kill or to inflict great bodily harm[.]” La.R.S. 14:30.1(A)(1). Specific intent is defined as “that state of lumind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” La.R.S. 14:10. The determination of specific criminal intent is a question of fact. State v. Seals, 95-0305, p. 6 (La.11/25/96), 684 So.2d 368, 373, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997), post-conviction grant of new trial on other grounds, State ex rel. Seals v. State, 00-2738 (La.10/25/02), 831 So.2d 828; State v. Gant, 06-232, p. 8 (La.App. 5 Cir. 9/26/06), 942 So.2d 1099, 1111, writ denied, 06-2529 (La.5/4/07), 956 So.2d 599. Specific intent may be inferred from the circumstances and from the defendant’s actions, and the intent to kill or to inflict great bodily harm may be inferred from the *392 extent and severity of the victim’s injuries. State v. Packnett, 04-709, p. 6 (La.App. 5 Cir. 12/28/04), 892 So.2d 615, 619, writ denied, 05-0599 (La.6/3/05), 903 So.2d 455 (Citation omitted).
Until the defendant picked up the gun, no weapons were involved in the altercation. It was simply an argument that escalated into a fistfight. According to Deverrick and Isaac, the defendant deliberately picked up the gun and pointed it at Lionel.
Specific intent to kill may be inferred from a defendant’s act of pointing a gun and firing at a person. State v. Hoffman, 98-3118, p. 48 (La.4/11/00), 768 So.2d 542, 585, opinion supplemented, 00-1609 (La.6/14/00), 768 So.2d 592, cert. denied, 531 U.S. 946, 121 S.Ct. 345, 148 L.Ed.2d 277 (2000). Most cases which have found evidence sufficient to support an inference of specific intent have relied on the proximity of the gunman to the victim: close-range or point-blank. Id., 98-3118 at 48-49, 768 So.2d at 585 (see cases cited therein). See also: State v. Batiste, 06-869, p. 6 (La.App. 5 Cir. 4/11/07), 958 So.2d 24, 27 (“Deliberately pointing and firing a deadly weapon at close range are circumstances which will support a finding of specific intent to kill.”). Specific intent can be formed in an instant. State v. Cousan, 94-2503, p. 13 (La.11/25/96), 684 So.2d 382, 390. All that is necessary is that the defendant form the specific intent to kill or inflict great bodily harm for an instant when committing the crime of second degree murder. State v. Henderson, 28,932, p. 18 (La.App. 2 Cir. 12/11/96), 684 So.2d 1054, 1063 (Citation omitted).
Isaac stated that he saw the defendant point the gun directly at Lionel’s head and that the defendant fired the gun at Lionel at point blank range. Isaac testified that Lionel did not do anything to provoke the defendant to shoot him in the head.
Deverrick testified that during the scuffle, the defendant approached Isaac’s jacket, and Lionel looked at the defendant. Deverrick stated that Lionel ran toward the defendant, and the defendant shot Lionel in the left temple at point blank range.
In contrast, the defendant testified to a different version of the incident. He testified that he grabbed the gun so no one would get hurt. He explained that he raised the gun toward the victim because he believed that the victim was attempting to pick up the gun first.
Additionally, the defendant admitted that his “hand” was on the gun’s trigger when he raised the gun toward the victim, although he testified he did not want the gun to discharge. But Deverrick testified that the gun did not go off by itself; that defendant aimed and fired. Moreover, Captain Scanlan, a firearms expert, testified that he examined several pieces of evidence in this case, including the gun, a Bryco .22 caliber semi-automatic pistol. His examination included test firing the gun. The gun was operable and in good working order. He testified that a person would have to intentionally pull the gun’s trigger in order to fire the weapon. He explained that the gun does not have a “hair trigger,” but a standard trigger that must be forcefully pulled.
The trial judge made a credibility call to accept the testimony refuting the defendant’s version that the gun accidentally discharged. We cannot say that the | istrial court was clearly wrong in its evaluation of the witnesses’ testimony and its credibility call.
Viewing the evidence in the light most favorable to the prosecution, the evidence was sufficient to prove second degree murder; and it was thus sufficient to support *393 the responsive verdict of manslaughter. As such, this assignment lacks merit.
Sentence
La.R.S. 14:31(B) pertinently provides: “Whoever commits manslaughter shall be imprisoned at hard labor for not more than 40 years.” The defendant, a first offender, who was 16 at the time of the offense, received a 30-year sentence, which was ten years short of the maximum. The defendant argues that his 30-year sentence is constitutionally excessive as compared to other manslaughter sentences imposed under similar facts. He also complains that his sentence is excessive in comparison to that of Isaac, who entered into a plea bargain with the state in exchange for his testimony at the defendant’s trial. The state responds that the trial court did not abusé its broad sentencing discretion, and that the defendant’s sentence is appropriate to the offense.
At the defendant’s request, the trial court held a sentencing hearing. At the time of his death, Lionel was 18. The court heard victim impact testimony from Keith Zarders, the victim’s uncle and guardian; and, Paula Zarders, the victim’s grandmother. They testified that the victim’s death devastated the family.
The defense presented testimony from Lawrence Soniat, a deacon at the defendant’s church. He testified that the defendant had been on the junior deacon board approximately three years. He described the defendant as a church-going person and a “fine kid” who attended the board’s meetings. He stated that the defendant was never a person who talked back or said anything out of the way. 114When the defendant was asked to do something, he complied. Mr. Soniat was surprised about the incident.
The defendant’s mother, Scheuan Riley Lewis, testified that the defendant was “a respectable child” and “a good child.” She stated that he had planned to attend college or join the military.
The defendant made a brief statement in which he apologized to the victim’s family and insisted that the shooting was unintentional on his part.
After hearing argument from defense counsel and the prosecutor, the trial judge stated that he thoroughly considered all of the sentencing guidelines in La.C.Cr.P. art. 894.1. He felt the incident was senseless. He said that he also understood that the defendant was a 16-year-old who was being tried as an adult. And 16-year-olds do not think as 30-year-olds. If a 16-year-old thought as a 40 or 50-year-old, he would not be fighting over a one-dollar cigar containing marijuana. However, a young life was lost. The trial judge said he did not take the loss lightly. He thought that a sentence which would serve the purpose of justice in this matter was 30 years at hard labor.
At sentencing, the defendant made an oral motion to reconsider sentence, generally objecting to the excessiveness of the sentence. The trial court denied the motion.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. State v. Smith, 01-2574, p. 6 (La.1/14/03), 839 So.2d 1, 4, citing State v. Sepulvado, 367 So.2d 762, 767 (La.1979). A. sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. Id., citing State v. Bonanno, 384 So.2d 355, 357 (La.1980). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it *394 shocks the sense of justice. State v. Lobato, 603 So.2d 739, 751 (La.1992); State v. Lawson, 04-334, p. 6 (La.App. 5 Cir. 9/28/04), 885 So.2d 618, 622.
On appellate review of sentence, the only relevant question is “‘whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.’ ” State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608, 608 (Internal quotations in original, citations omitted).
To constitute an excessive sentence, this court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no reasonable contribution to acceptable penal goals and therefore, is nothing more than the needless imposition of pain and suffering. State v. Guzman, 99-1528, p. 15 (La.5/16/00), 769 So.2d 1158, 1167 (Citation omitted).
Isaac testified that in juvenile court, he “pleaded guilty” to possessing a gun on school grounds. The defendant argues that his sentence is constitutionally excessive because Isaac, who brought the weapon to school and fought with the victim, was adjudicated in juvenile court for illegal carrying of a weapon while the defendant is serving a 30-year sentence in an adult institution.
In the analogous situation involving co-defendants, co-defendants convicted of the same crime need not be sentenced equally, even where the co-defendants come from similar backgrounds and might be similar in other respects. However, disparity of sentences is another of the factors to be weighed by this court in assessing an excessiveness claim. State v. Smith, 433 So.2d 688, 698 (La.1983) (Citations omitted); State v. Page, 02-689, p. 22 (La.App. 5 Cir. 1/28/03), 837 So.2d 165, 179, writ denied, 03-0951 (La.11/7/03), 857 So.2d 517.
| mIn the instant case, there was justification for the disparity in sentences. While the gun belonged to Isaac, it was the defendant who picked up the gun during the scuffle and fired the weapon. Although the argument regarding disparity of sentences lacks merit, we conclude that the sentence is otherwise constitutionally excessive.
La.R.S. 14:31 was amended by Acts 1992, No. 306, § 1 to increase the maximum term of imprisonment for manslaughter from 21-years-imprisonment to 40 years. After the 1992 amendment, the Supreme Court has affirmed one manslaughter sentence for a first felony offender defendant who was charged with second degree murder but convicted of manslaughter: State v. Harris, 97-0300, p. 5 (La.4/14/98), 711 So.2d 266, 270 (The Supreme Court upheld a 17-year sentence for a defendant who could have easily escaped abuse as she had in the past if she were truly concerned for her safety. The court stated that she instead intentionally went into the closet and retrieved the gun and when the victim, empty-handed, entered the room, she intentionally shot and killed him from across the room.).
We have reviewed a representative sampling of post-amendment appellate cases. In these cases, the defendants were apparently first-time felony offenders and were charged with second degree murder but convicted of manslaughter. Our review reflects that in eleven cases involving a gun, the courts upheld sentences within the sentencing range of 12 to 40 years: State v. Osborne, 00-0345, p. 11 (La.App. 4 Cir. 12/6/00), 775 So.2d 607, 613, writ denied, 01-0315 (La.12/14/01), 803 So.2d 985 (The 72-year defendant, who shot an unarmed man twice, received a 12-year sentence.); State v. Hodge, 41,097, pp. 1, 8, 9- *395 10 (La.App. 2 Cir. 8/23/06), 938 So.2d 1066, 1068, 1072-73 (The 50-year-old defendant, who armed himself with a gun and shot two people, received a 22-year sentence.); State v. Favorite, 03-425, p. 19 (La.App. 5 Cir. 11/25/03), 862 So.2d 208, 220, writ denied, 03-3529 (La.4/23/04), 870 So.2d 298 (This Court upheld a 29-year sentence for a young man who fired nine shots, in an area surrounded by spectators, striking the unarmed victim several times (some shots from the rear) killing him, before fleeing the scene.); State v. George, 33,859, pp. 1, 16, 17 (La.App. 2 Cir. 9/27/00), 768 So.2d 748, 751, 759, 760, writ denied, 00-2806 (La.9/14/01), 796 So.2d 674 (The court upheld a 25-year sentence for a 40-year-old defendant who shot the victim more than two hours after he had a confrontation with her.); State v. Batiste, 06-869, pp. 2, 4, 6-7, (La.App. 5 Cir. 4/11/07), 958 So.2d 24, 25, 26, 27-28 (This Court upheld a 40-year sentence for a 24-year-old defendant who shot the victim without provocation during an argument over a jacket. This Court considered the fact that the defendant deliberately pointed a gun at the victim and shot him four times without provocation, as support for the maximum sentence.); State v. Lanieu, 98-1260, pp. 2, 12, 13 (La.App. 1 Cir. 4/1/99), 734 So.2d 89, 90-91, 96, 97-98, writ denied, 99-1259 (La.10/8/99), 750 So.2d 962 (The court upheld a 40-year sentence for a 19-year-old defendant who was previously arrested for attempted second degree murder. The defendant shot the victim in the head twice after an argument. After the shooting the defendant drove off in the victim’s car with the victim’s body in the car and dumped the body in a field. When the police pursued him, the defendant fled in the vehicle at a high rate of speed.); State v. Pleasant, 99-2349, pp. 13-14 (La.App. 4 Cir. 11/8/00), 772 So.2d 910, 917-18, writ denied, 00-3349 (La.10/26/01), 799 So.2d 1159 (The court upheld a 30-year sentence where the defendant shot the unarmed victim numerous times in the back with an assault rifle.); State v. Jones, 05-735, pp. 10-11 (La.App. 5 Cir. 2/27/06), 924 So.2d 1113, 1118-19, writ denied, 07-0151 (La.10/26/07), 966 So.2d 567[5] (This Court upheld a 40-year | ^sentence where the defendant had armed himself prior to the killing because of a previous confrontation with the victim, the defendant shot the victim four times in the face, and the defendant fled the state after the shooting.); State v. Weatherspoon, 06-539, p. 33 (La.App. 5 Cir. 12/12/06), 948 So.2d 215, 235-36, writ denied, 07-0462 (La.10/12/07), 965 So.2d 398 (The 16-year-old defendant with prior history of violence received a 35-year sentence in the shooting death of a 14-year-old boy. The defendant fired several shots into a crowd of people with no regard for human life.); State v. Williams, 34,359, pp. 6, 20, 23 (La.App. 2 Cir. 5/9/01), 786 So.2d 203, 209, 216, 217, writ denied, State ex rel. Williams v. State, 01-2275 (La.5/10/02), 815 So.2d 835 (The court upheld a 16-year-old’s 30-year sentence for a defendant who was charged as a principal to second degree murder during an armed robbery and who had a significant juvenile history. The court noted that when a manslaughter, such as in that case, was committed in furtherance of an armed robbery, the combination elevates a “typical” manslaughter to the “worst” type of manslaughter.); State v. Bowman, 95-0667, p. 15 (La.App. 4 Cir. 7/10/96), 677 So.2d 1094, 1102, writ denied, 96-2070 (La.1/31/97), 687 So.2d 400 (The 16-year-old defendant, who drove the car but did not pull the trigger, received a 33-year *396 sentence for an unprovoked drive-by shooting. The trial court found that the defendant was “a menace to society” and should be removed from the streets of the city for a long period for the protection of others.).
In two cases involving another type of weapon or a physical blow to the head, the courts upheld a sentencing range of 20 to 23 years: State v. Batiste, 07-482, pp. 1, 2 (La.App. 3 Cir. 10/31/07), 969 So.2d 704, 705 (The court upheld a 20-year sentence for a 33-year-old defendant, who had the last opportunity to either drive off to avoid the victim but who walked around to the other side of the vehicle where the victim was and struck him in the head with one blow to the [ U)head.); State v. Thomas, 08-113, p. 11, 14 (La.App. 5 Cir. 6/19/08), 988 So.2d 750, 757, 759 (This Court upheld a 23-year sentence for a defendant, who severely beat the victim to death with a baseball bat.).
In those cases involving a gun, where the courts upheld sentences in the 29 to 40-year range, the circumstances of the crime were more shocking than the defendant’s offense. In the three cases upholding a 40-year sentence, the victim was shot at least twice. Batiste, supra; 06-869 at 6, 958 So.2d at 27; Lanieu, supra, 98-1260 at 13, 734 So.2d at 98; Jones, supra, 05-735 at 10, 924 So.2d at 1119. In the case upholding a 35-year sentence, the 16-year-old defendant fired several shots into a ci'owd of people with no regard for human life. Weatherspoon, supra, 06-539 at 33, 948 So.2d at 235-36. In the case upholding a 33-year sentence, the court found that the 16-year-old defendant was a principal to an unprovoked drive-by shooting. Bowman, supra, 95-0667 at 16, 677 So.2d at 1102.
In the cases upholding a 30-year sentence, the victim was shot numerous times in the back, Pleasant, supra, 99-2349 at 14, 772 So.2d at 918, or the offense occurred in furtherance of an armed robbery, Williams, supra, 34,359 at 22, 786 So.2d at 217 (16-year-old defendant). In the case upholding a 29-year sentence, the defendant fired nine shots in a crowded area. State v. Favorite, supra, 03-425 at 19, 862 So.2d at 220.
We further note that in two instances, courts have held that a 40-year sentence was constitutionally excessive. In one case, the court gave direction to the trial court concerning the proper sentence to impose, which in that case was a 20-year maximum.
In State v. Freelon, 26,938, p. 1 (La.App. 2 Cir. 5/10/95), 655 So.2d 687, 688, the court found that a maximum 40-year sentence was constitutionally excessive for a 16-year-old offender who had been charged with second degree 12nmurder but convicted of manslaughter. The shooting occurred during a fight over a baseball cap. The defendant stated that the victim threatened him with a knife; however, none of the witnesses to the shooting confirmed his story. The defendant produced a semi-automatic pistol and fired it twice— first into the ground and then into the chest of the victim. At the time of sentencing, the Louisiana Sentencing Guidelines provided a grid of 150 to 180 months (12.5 to 15 years) for the offense.[6] The defendant argued that there were no aggravating circumstances sufficient to justify a departure from those guidelines.
*397 The court agreed with the trial judge that the fact that the defendant created a risk of great bodily harm to more than one person, the persistent involvement by the defendant in fights and skirmishes, and his disciplinary history and alcohol use were valid reasons in the consideration of an upward departure from the guidelines. However, the court found that the imposition of the maximum sentence was unconstitutionally excessive. Id., 26,938, p. 3 (La.App. 2 Cir. 5/10/95), 655 So.2d 687, 689.
In that case, the pre-sentence investigation reflected that the defendant had a juvenile record involving violence but this was his first adult offense. The court, however, was mindful of the youth in terms of his culpability as well as his potential for rehabilitation. Further, the court opined that contrary to the trial court’s suggestion, the defendant did not show the kind of deliberate cruelty to the victim present in cases where maximum sentences have been upheld. Also, it did not appear that this offense was committed in furtherance of some other offense such as armed robbery. The court viewed the sentence as a needless infliction of [21 suffering upon the defendant. Id., 26,-938, pp. 3-4 (La.App. 2 Cir. 5/10/95), 655 So.2d 687, 689-90.
In State v. Walker, 29,877, pp. 1, 7-8 (La.App. 2 Cir. 10/29/97), 702 So.2d 18, 19, 22, the court found that a 40-year sentence for a defendant who was 20 years old at the time of the offense was constitutionally excessive. The defendant claimed self-defense in the stabbing death of her former boyfriend’s current girlfriend. The court found that the trial court abused its discretion in sentencing the defendant to the statutory maximum and the maximum sentence the court could affirm for this offense and this offender was 20 years at hard labor. Although the case is factually distinguishable, there are similarities in terms of factors that the court considered in finding an abuse of discretion. Like this case, the offender was youthful, which reflected upon the defendant’s culpability for her actions as well as her potential for rehabilitation; there was nothing reported in the defendant’s history which showed a propensity towards violence; and, the defendant did not go to her boyfriend’s apartment, where the stabbing occurred, for the purpose of instigating a fight.
These post-amendment cases underscore the fact that sentences within the 30-year range or higher are constitutionally acceptable for more serious offenders with less chance of rehabilitation.
There was no evidence that the defendant formed the specific intent to kill Lionel at some time prior to the fight that broke out between other parties. There was no evidence of a plan, scheme, motive, or specific intent formed before the defendant picked up the gun during the fight. Furthermore, the defendant had no history of violence or any other juvenile offenses. Given these factors, as well as other cases speaking to this subject, we conclude the trial judge abused his Indiscretion in sentencing the defendant to a sentence that was 10 years short of the maximum.
We do not minimize the devastating impact of the defendant’s offense on the victim’s family. Nor do we minimize the seriousness of the offense. While not recommending a sentence, we provide the trial court with direction, noting that the maximum sentencing range we could affirm for the defendant’s conviction may extend to a 20-year sentence.[7] Every *398 thing in this record indicates that a 20-year sentence would fulfill all the requisites of the constitutional requirement of proportionate punishment.
Decree
For the reasons stated above, we affirm the defendant’s conviction. We vacate the sentence and remand the case to the district court for resentencing in accord with this opinion.

AFFIRMED IN PART; VACATED IN PART; REMANDED FOR RESEN-TENCING.

ROTHSCHILD, J., dissents in part with reasons.

. Isaac testified that he and the defendant referred to each other as “cousins.”

. The defendant admitted that he obtained the marijuana at school the day of the incident.

. Although Deverriek told the police that he and the defendant also fought, he testified at trial that this statement was untrue. He stated that he made the statement to the police out of guilt because he wanted the police to think that he helped Lionel.

. La.R.S. 14:31 provides in pertinent part:
A. Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm, (a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person!;]

. The defendant's prior criminal history was unclear from the record. 05-735 at 11, 924 So.2d at 1119

. The Sentencing Guidelines promulgated by the Louisiana Sentencing Commission were repealed in 1995 by Acts 1995, No. 942, effective August 15, 1995. The Act repealed Code of Criminal Procedure arts. 875.1 and 881.6, and R.S. 15:325 through 329, relative to sentencing guidelines.

. La.C.C.P. art. 881.4(A) provides:
If the appellate court finds that a sentence must be set aside on any ground, the court *398 shall remand for resenlence by the trial court. The appellate court may give direction to the trial court concerning the proper sentence to impose.