NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-688

STATE OF LOUISIANA

VERSUS

JONATHAN HOPKINS

**********

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 82827
HONORABLE VERNON BRUCE CLARK, DISTRICT JUDGE

**********

JOHN E. CONERY
JUDGE

**********

Court composed of Shannon J. Gremillion, Phyllis M. Keaty, and John E. Conery, Judges.

AFFIRMED.

**Paula C. Marx**
**Louisiana Appellate Project**
**Post Office Box 80006**
**Lafayette, Louisiana 70598-0006**
**(337) 991-9757**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Jonathan Hopkins**

**Honorable Asa Allen Skinner**
**District Attorney**
**Terry W. Lambright**
**Assistant District Attorney**
**30th Judicial District Court**
**Post Office Box 1188**
**Leesville, Louisiana 71496-1188**
**(337) 239-2008**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**CONERY, Judge.**

On February 9, 2012, a Vernon Parish grand jury indicted Defendant, Jonathan Hopkins, for second degree murder and conspiracy, violations of La.R.S. 14:30.1 and La.R.S. 14:26. On January 8, 2014, Defendant entered a plea of guilty to a lesser homicide, manslaughter. The conspiracy charge was dismissed.

On March 11, 2014, the trial court sentenced Defendant to twenty-five years at hard labor. Defendant now appeals his sentence, assigning two errors. We find that Defendant's assignments of error lack merit and affirm his sentence.

## FACTS AND PROCEDURAL HISTORY

Defendant entered a guilty plea based upon the following facts:

BY MR. SKINNER [State]:

> Your Honor, on or about on the afternoon of December 28th, 2011, at the jail here in Vernon Parish, again, Kelly Lindsey was in there for having failed to pay child support. Now, this defendant and Octavius Riggins had got into it with Kelly and Kelly was challenged by Jonathan over a tray of food or something and they got into a fight. And, as a result of this defendant and Octavis Riggins hitting and kicking Kelly Lindsey, he did in fact die that particular day and before the deputies could get in there to render assistance. In that particular bull pen there were, I think, approximately fifteen people in there -- maybe a little bit more. Your Honor, the State as part and partial [sic] of the factual basis would introduce the entire record of these proceedings also which would include all of the statements from those that were willing to tell what they saw and from those that did see as well as the defendant's statement, as well as the Grand Jury testimony, Your Honor.

BY MS. NELSON [Defendant]:

> And, Your Honor, just so that the record is clear, Mr. Hopkins did have some dispute with some of the specific facts that Mr. Skinner just recited. I think he denies that there was any kicking, or that there was -- the fight was over a food tray. But, bottom line is, we don't dispute the fact that there was a fight between him and Mr. Lindsey and then Mr. Lindsey died as a result of that fight.

BY THE COURT:

And that there's a factual basis that would exist for this plea . . .

BY MS. NELSON [Defendant]:

. . . that there is sufficient factual basis that exists to substantiate that plea, yes.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there are no errors patent.

## ASSIGNMENTS OF ERROR

On appeal, Defendant assigns the following errors:

1. The sentencing judge failed to articulate for the record sufficient reasons to justify the sentence, and further failed to adequately consider mitigating factors in this case.

2. The sentence is harsh and excessive to the degree that it is cruel and unusual punishment considering the death in this case was akin to an accident resulting from a fight in the jail, and Mr. Hopkins had no intent to kill Kelly Lindsey.

## DISCUSSION

Defendant combines both his assignments in a single argument. He argues the trial court erred by finding that his remorse was the only mitigating circumstance. Further, he argues that his twenty-five year sentence is excessive. Defendant also argues that the trial court did not properly consider the sentencing guidelines set forth in La.Code Crim.P. art. 894.1. However, this claim was not raised in his motion to reconsider sentence; therefore, it will not be addressed. As this court has explained:

> Louisiana Code of Criminal Procedure Article 881.1(E) requires a defendant to set forth the specific grounds on which a motion to reconsider may be based. Failure to include a specific ground upon which a motion to reconsider sentence may be based

"shall preclude . . . the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review." *Id.* In the present case, although the defendant generally raised the issue of excessiveness in his motion to reconsider sentence, he failed to specifically allege that the trial court failed to consider the factors of La.Code Crim.P. art. 894.1. Accordingly, because that claim was not specifically set forth in his motion to reconsider, it cannot be reviewed in this appeal, *State v. Landry*, 09-260 (La.App. 3 Cir. 11/4/09), 21 So.3d 1148, *writ denied*, 09-2577 (La.5/21/10), 36 So.3d 229, and our review of the defendant's sentence is restricted to his bare claim of excessiveness. *State v. Mims*, 619 So.2d 1059 (La.1993).

*State v. Prejean*, 10-480, p. 2 (La.App. 3 Cir. 11/3/10), 50 So.3d 249, 251.

The law regarding excessive sentence claims is well-established:

This court discussed the standard of review applicable to claims of excessiveness in *State v. Whatley,* 03–1275, pp. 5–6 (La.App. 3 Cir. 3/3/04), 867 So.2d 955, 958–59, as follows:

The Eighth Amendment to the United States Constitution and La. Const. art. I, § 20 prohibit the imposition of cruel or excessive punishment. " '[T]he excessiveness of a sentence becomes a question of law reviewable under the appellate jurisdiction of this court.' " *State v. Dorthey,* 623 So.2d 1276, 1280 (La.1993) (quoting *State v. Sepulvado,* 367 So.2d 762, 764 (La.1979)). Still, the trial court is given wide discretion in imposing a sentence, and, absent a manifest abuse of that discretion, we will not deem as excessive a sentence imposed within statutory limits. *State v. Pyke,* 95–919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713. However, "[m]aximum sentences are reserved for the most serious violations and the worst offenders." *State v. Farhood,* 02–490, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 225. The only relevant question for us to consider on review is not whether another sentence would be more appropriate, but whether the trial court abused its broad discretion in sentencing a defendant. *State v. Cook,* 95–2784 (La.5/31/96), 674 So.2d 957, *cert. denied,* 519 U .S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

The fifth circuit, in [*State v.*] *Lisotta,* 726 So.2d [57] at 58 [ (La.App. 5 Cir.1998) ], stated that the reviewing court should consider three factors in reviewing the trial court's sentencing discretion:

1. The nature of the crime,
2. The nature and background of the offender, and

3. The sentence imposed for similar crimes by the same court and other courts.

*State v. Larry*, 14-253, p. 1 (La.App. 3 Cir. 10/1/14) (unpublished opinion). *See State v. Fontenot*, 06-226 (La.App. 3 Cir. 7/12/06), 934 So.2d 935.

The maximum sentence for manslaughter is forty years. La.R.S. 14:31(B). Defendant received a mid-range sentence. Employing the analysis set forth in *Whatley* and *Lisotta*, we find that Defendant's assignments of error lack merit.

We find that even though the trial court acknowledged that the killing in this case was unintentional, the nature of the crime is obviously serious, as it is a homicide. After hearing testimony from Defendant, the trial court observed:

BY THE COURT:

Okay. In reviewing the Article 894.1 Code of Criminal Procedure factors, the Court found that the following was pertinent: First, there are no substantial grounds which would tend to excuse or justify this defendant's criminal conduct nor did he act under strong provocation by the victim or anyone else. I'll get into a little more detail about those particular issues in just a second. He is thirty-one years of age. He's divorced. He has three children. Two from his wife and one from another woman. He is in good health. He has been employed in the past and worked primarily as a barber. He has a high school education. He has admitted to the use in the past of cocaine. He is classified in the PSI as a 3rd felony offender and the report indicates that his record is that on November the 8th, 2001, in the 30th Judicial District Court, he was convicted of distribution of marijuana and given a six-year suspended sentence and placed on supervised probation for four years. On October the 11th, 2006, in the 36th Judicial District Court in DeRidder, he was convicted of aggravated flight from an officer, which is a felony, and given a two-year Department of Correction[s] sentence. That was suspended and he was placed on three years supervised probation and on December the 10th, 2009, his probation was revoked. On April the 13th, 2007, in the 36th Judicial District Court, he was convicted of simple escape (felony grade) and given a two-year Department of Corrections sentence. He also has on his record other convictions for domestic abuse battery, disturbing the peace, possession of drug paraphernalia and theft -- all of the misdemeanor grade. In reviewing the facts of this case, the statements from the other inmates that were in the record and the testimony at the sentencing hearing, the Court is convinced that this was not an intentional killing. It was truly what I think comes

4

under the definition of manslaughter. It was unintentional. This defendant did go in -- did not go in with the intent to kill. However, clearly his actions were a cause of the death and the cause of the death of this individual. The damage is done. His fight was over a food tray. And, based on the jail house inmate culture, this defendant had to answer the call of the victim to stand up and fight about the food tray. And the culture -- by the "culture" I mean, when apparently -- I didn't know they did it. I knew the culture was, if somebody calls you out, you don't back off otherwise you're, you're looked -- you're viewed by other inmates in a -- in a manner that is not very favorable. But, the way they call them out here in the Vernon Parish jail at least is, if you put your shoes on, that means you're going to stand your ground and I'm -- and you're going to fight and you're -- the other one is expected to answer it and that's what happened in this case. Mr. Hopkins answered it by putting his shoes on and going to fight. Well, that may be the jailhouse culture but that's the most stupid thing that I can think -- that I could think of one would do is fight over a food tray. Now, this man died over a fight over a food tray. There's no justification, no explanation -- I don't care what the jailhouse culture was. You're in trouble when you're in jail in the first place and you're going to compound it by getting in a fight because some other stupid inmate calls you out over a food tray and that's what the victim in that case was doing -- doing something stupid in the first place and a food tray is not -- with food is not something that someone ought to be fighting over, much less dying over in my opinion. This could have been avoided very easily -- should have been avoided very easily, but two men -- two grown men made childish decisions and the result is what it is. He must now deal with the consequences -- both the victim's family and the defendant in this case. This victim is no longer here. His family will never see him, never touch him, never be able to talk to him. They'll just have photos and memories to use and to go by. Whereas, your family, sir, will be able to see you wherever you are. They'll be able to talk to you. They'll be able to write to you. And, ultimately, they may be able to even have you back home. The only mitigating circumstances I can find in this case is you are remorseful and I believe you're genuinely remorseful for what happened to him. I, I felt like that was what I saw when you testified and you also stated the same in the letters, but using better judgment would have been the, the better course to take. The sentencing of the Court based on all of this is as follows: That you serve twenty-five years at hard labor with the Louisiana Department of Corrections.

In addition, based upon the trial court's remarks regarding the nature and background of the offender, it appears Defendant has a criminal past that does not include egregious felonies; however, his record includes aggravated flight and a misdemeanor battery. Further, as to similar sentences for a similar crime, in *State*

*v. Montgomery*, 525 So.2d 7 (La.App. 3 Cir.), *writ denied*, 525 So.2d 1046 (La.1988), this court affirmed a ten-year sentence for the unintentional manslaughter of a husband by a wife; in *State v. Lewis*, 08-1317 (La.App. 5 Cir. 5/26/09), 16 So.3d 385, a fifth circuit majority overturned a thirty-year sentence for a sixteen-year-old manslaughter defendant who shot his victim in the head, noting a lack of premeditation. In remanding, the fifth circuit indicated that a twenty-year sentence would not be excessive. During its discussion, the court observed:

> In two cases involving another type of weapon or a physical blow to the head, the courts upheld a sentencing range of 20 to 23 years: *State v. Batiste*, 07-482, pp. 1, 2 (La.App. 3 Cir. 10/31/07), 969 So.2d 704, 705 (The court upheld a 20-year sentence for a 33-year-old defendant, who had the last opportunity to either drive off to avoid the victim but who walked around to the other side of the vehicle where the victim was and struck him in the head with one blow to the head.); *State v. Thomas*, 08-113, p. 11, 14 (La.App. 5 Cir. 6/19/08), 988 So.2d 750, 757, 759 (This Court upheld a 23-year sentence for a defendant, who severely beat the victim to death with a baseball bat.).

*Id*. at 396. However, the supreme court reinstated the thirty-year sentence, noting evidence that the Defendant deliberately shot at the victim's head during a melee over a one-dollar cigar. *State v. Lewis*, 09-1404 (La. 10/22/10), 48 So.3d 1073. In another case, this court reviewed and affirmed the twenty-five-year sentence of a manslaughter defendant whose charge had been reduced from second degree murder. The defendant was a first felony offender who shot the victim and a second person during a struggle that arose from a drug transaction. *State v. Ford*, 94-1440 (La.App. 3 Cir. 4/5/95), 653 So.2d 107.

Viewing the facts of the present case in light of *Lewis*, *Montgomery*, and *Ford*, we affirm Defendant's sentence. The sentencing court considered the requisite factors and had broad discretion. Defendant's sentence was a mid-range

6

sentence proportionate to the crime, and not outside the norms of Louisiana jurisprudence.

## DISPOSITION

Defendant's assignments of error lack merit and his sentence is affirmed.

**AFFIRMED.**

This opinion is **not designated for publication**.  Uniform Rules—Courts of Appeal, Rule–2.16.3.